(No. 91-CC-0595–)

KELLY WHITE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 2, 1994.*

SCHOENFIELD & SWARTZMAN (RICH SCHOENFIELD and KIMBERLEE MASSIN, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (IAIN JOHNSTON, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

The Claimant was a resident of the Illinois Department of Corrections. On October 5, 1989, he was eating dinner in the dining room, along with 150 to 200 other inmates. A fight broke out several rows from the Claimant between two inmates. A crowd quickly ringed the combatants to watch.

Officer McEwing was on duty that evening in the guard tower overlooking the dining hall. Officer Anderson was on foot patrol in the north dining hall. Officer Mancera was in the guard tower overlooking the south dining hall. Lieutenant Valestin was on floor duty in the south dining hall.

After officer McEwing observed the fight, she sounded the alarm bell. Inmates have been instructed that at the alarm's sounding, any extraneous activity should cease. They have been informed that they should sit or stand quietly where they are after the bell sounds. The bell was ignored in this case. The fight continued, and the crowd did not return to their seats. Officer Anderson approached the fighters and attempted to break up the disturbance. One of the fighters swung at him. Anderson then realized that he had no back-up or support. Two minutes after the bell had sounded, the fight was still going on. Officer McEwing picked up a .12 gauge shotgun and loaded it with birdshot.

The distance from the guard tower to the site of the fight was disputed. The court will accept the Respondent's estimate of approximately 60 feet. McEwing fired a warning shot toward the ceiling. This had no effect, and her next shot was aimed at the combatants. Mr. White states that the pellets from the second blast ricocheted off the floor and hit him in the lower leg and ankle. The fight continued, and McEwing fired a final load in the direction of the combatants. Mr. White states that this shot also ricocheted from the floor and resulted in wounds to his back and groin area. After the third shot, the fight stopped. The fighters allowed themselves to be cuffed by the officers on the floor.

Mr. White and others who were struck by the birdshot were taken to the infirmary, treated, and released. Mr. White was unable to walk for several days, and he claims that he still experiences discomfort from the pellets left in his leg. Mr. White has asked for $20,000 for his injuries.

Petitioners raised an argument for the first time in their brief that the State was negligent for failure to provide proper training to its correctional officers regarding the use of weapons in the tower. Petitioner's counsel argues that the use of tear gas would have been preferable to birdshot. He further argues that officer McEwing did not use gas because she erroneously thought she needed the warden's permission to do so. This turned out to be untrue. However, several of the other officers testified that the use of tear gas projectiles was contraindicated under the circumstances. In addition, the argument was made for the first time in the brief. Therefore, we decline to find liability based on that argument.

Inmates in prison have a reasonable right to personal safety. When a fight breaks out, the State owes a duty to

the general prison population to restore order as quickly as possible and prevent the unwanted attack on inmates, regardless of other inmates. However, being in prison is not in any way to be compared with being at Boy Scout camp. The officer's actions in this case were entirely reasonable, considering the situation she was confronted with. She sounded the alarm and waited for the inmates to respond as they had been instructed. Her first shot was in the ceiling. This too was ignored. By choosing to use birdshot, instead of a mini .14 caliber gun also in her possession, she used somewhat less than the maximum amount of force available to her. Under the circumstances, and considering the distance from the tower to the fight scene, the use of the shotgun in most circumstances would not be the use of deadly force. We find that officer McEwing reacted properly and promptly to a potentially dangerous situation. She did so in measured and reasoned steps. We therefore deny this claim.